NOT DESIGNATED FOR PUBLICATION

No. 123,812

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

KYLE HEINEKEN,
*Appellant*,

v.

KANSAS DEPARTMENT OF REVENUE,
*Appellee*.

MEMORANDUM OPINION

Appeal from Riley District Court; KENDRA LEWISON, judge. Opinion filed January 28, 2022. Affirmed.

*Jeremiah L. Platt*, of Clark & Platt, Chtd., of Manhattan, for appellant.

*Jay P. Van Blaricum*, of Legal Services Bureau, Kansas Department of Revenue, for appellee.

Before SCHROEDER, P.J., BRUNS and WARNER, JJ.

PER CURIAM: Kyle Heineken appeals the district court's decision to uphold the administrative suspension of his driving privileges following his arrest for suspicion of driving under the influence of alcohol. On appeal, Heineken contends that the district court erred in ruling that his request to obtain additional testing was neither unambiguous nor unequivocal. Previously, this issue was presented and decided in an interlocutory appeal brought by the State in Heineken's criminal case. As a result, we find that issue preclusion is applicable in the present appeal and Heineken is bound by our previous ruling that his right to seek additional testing was not violated. Moreover, we find that

1

even if issue preclusion was not applicable, the result would be the same based on a review of the record. Thus, we affirm.

## FACTS

On the evening of September 29, 2018, Clay County Sheriff's Deputy Keith Myers stopped Heineken's vehicle for speeding. Following a series of field sobriety tests, Deputy Myers arrested Heineken for suspicion of driving under the influence of alcohol. At the Clay County Law Enforcement Center, Deputy Myers presented Heineken with a DC-70 implied consent advisory form and read it aloud to him. In so doing, Deputy Myers informed Heineken that he had the right to seek additional testing after he completed the requested breath testing.

Heineken consented to a breath alcohol test, which revealed that his blood alcohol level exceeded the legal limit for driving. However, noticing chewing tobacco flakes on the mouthpiece of the testing machine following the first test, Deputy Myers asked Heineken if he wanted to take a second breath test. Again, Heineken consented. During the second 20-minute deprivation period before the second breath alcohol test, Deputy Myers explained to Heineken that he thought the first test might be invalid because of the chewing tobacco in his mouth.

While they continued to wait, Heineken asked the officer about the possibility of obtaining an additional blood test. In particular, the custodial video recorded the following conversation between Deputy Myers and Heineken:

> "'Deputy Myers: [If your attorney] says yeah, go ahead [with additional testing], you're going to have to secure testing on your own. That means you'll have to go somewhere and take the test.

> "'Heineken:  That'll be fine.

2

"'Deputy Myers: I mean, there's no place around here that you can take an actual breath test. The only option . . . .

"'Heineken: What about blood?

"'Deputy Myers: The only option would be to go the hospital and have blood drawn. That's something you would have to do on your own.

"'Heineken: Under your surveillance?

"'Deputy Myers: No . . . at this point, any additional testing that you do is on you, pretty much. So, that means, if you want to go have blood drawn and use that as your defense later down the road, that's . . . totally up to you because my basis for the arrest tonight was based on what I observed out in the field.'"

Then, Deputy Myers handed Heineken his phone. Although it appears from the video that Heineken texted someone, there is no suggestion that he called a physician, hospital, or attorney. Afterward, Heineken took the second breath test without requesting additional testing.

The second test also revealed a blood alcohol level over the legal limit for driving. Before turning Heineken over to the jailer for processing, Deputy Myers asked him whether he had any questions. Heineken responded, "No" and did not request additional testing. About two and a half hours after the initial stop—Heineken bonded out of jail. There is no indication in the record that Heineken went to a hospital or physician's office to obtain additional testing on his own after being released.

On October 18, 2018, the State charged Heineken with driving under the influence of alcohol and speeding in a separate driving under the influence criminal case. Prior to the trial in his criminal case, Heineken moved to suppress the breath alcohol tests, arguing that the Deputy Myers had denied him a reasonable opportunity to obtain

additional testing. Although a district magistrate judge first denied Heineken's motion to suppress, he later reconsidered and entered an order suppressing the breath alcohol test results. Thereafter, the State filed an interlocutory appeal under K.S.A. 22-3603, and a panel of our court held "that Deputy Myers did not deny Heineken 'a reasonable opportunity to have an additional test by a physician of [his] own choosing' as provided by K.S.A. 8-1004." *State v. Heineken*, No. 121,896, 2020 WL 1646805, at *3 (Kan. App.) (unpublished opinion). Accordingly, the panel reversed the district court's suppression of Heineken's breath alcohol testing and remanded the criminal case to the district court for further proceedings. On August 26, 2020, the Kansas Supreme Court denied a petition for review filed by Heineken and a mandate was issued. 312 Kan. 896 (2020).

Meanwhile, while the criminal action was pending, the Kansas Department of Revenue (KDOR) administratively suspended Heineken's driving privileges and Heineken filed a petition for judicial review in Riley County District Court. On January 5, 2021, the district court held a de novo hearing on Heineken's petition for review. At the evidentiary hearing, Heineken testified on his own behalf. In addition, the KDOR introduced the video that was taken during Heineken's testing at the Clay County Law Enforcement Center on the night of his arrest. The video is the same—with minor edits that are not material to this appeal—to the one previously admitted into evidence at the suppression hearing in Heineken's criminal case and considered by this court in the interlocutory appeal brought by the State in that case.

During closing arguments in the present action, the KDOR pointed out the previous opinion entered by this court in the criminal case regarding the issue of Heineken's purported request for additional testing. In particular, the KDOR argued:

> "I think the Court of Appeals says it pretty clearly and pretty succinctly in overruling the motion to suppress in *State v. Heineken*. They say 'Similarly, we find

4

Heineken's questions and statements to Deputy Myers to be at most ambiguous and far from an unequivocal request for additional testing. Even if Heineken's questions and statements could be construed as a request for additional testing, we find nothing in the record to suggest that Deputy Myers unreasonably interfered with any attempt by Heineken to secure additional testing. Instead, a review of the record shows that Deputy Myers honestly tried to answer Heineken's questions to the best of his ability and gave him several opportunities to ask questions.'"

On January 6, 2021, the district court entered a journal entry in which it denied Heineken's petition for review. In reaching this decision, the district court concluded—as this court had previously found in the criminal case—that "[Heineken's] request for an independent blood test was not unambiguous nor unequivocal." Thereafter, Heineken filed a timely notice of appeal of the district court's decision to uphold the administrative suspension of his driving privileges.

ANALYSIS

The sole issue presented in this action is whether the district court erred in concluding that Heineken's purported request for an independent blood test under K.S.A. 8-1004 was not unambiguous or unequivocal. K.S.A. 8-1004 provides a person suspected of driving under the influence of alcohol "a reasonable opportunity to have an additional test by a physician of the person's own choosing." As he did in the interlocutory appeal in his criminal case, Heineken continues to contend that he was not given a reasonable opportunity to seek additional testing. In response, the KDOR points out that this issue was previously decided by this court in the previous appeal and further contends that there was no violation of K.S.A. 8-1004 because Deputy Myers did not refuse to permit Heineken from seeking additional testing.

Appeals from the administrative suspension of driver's licenses are subject to review under the under the Kansas Judicial Review Act (KJRA), K.S.A. 77-601 et seq.

5

See *Moser v. Kansas Dept. of Revenue*, 289 Kan. 513, 516, 213 P.3d 1061 (2009). Under the KJRA, we review a district court's factual findings for substantial competent evidence while our review of its legal conclusions is unlimited. *Creecy v. Kansas Dept. of Revenue*, 310 Kan. 454, 466, 447 P.3d 959 (2019). On appeal, the burden of proving the invalidity of the agency action rests on the party—in this case Heineken—asserting such invalidity. K.S.A. 77-621(a)(1).

As the KDOR correctly points out, the issue presented in this appeal was previously addressed by our court in the interlocutory appeal brought by the State in Heineken's criminal appeal. As a result, we must determine if the doctrine of issue preclusion or collateral estoppel is applicable in this appeal. Whether issue preclusion or collateral estoppel applies is a legal question over which we exercise unlimited review. *State v. Parry*, 305 Kan. 1189, 1193-94, 390 P.3d 879 (2017).

Unlike the law of the case doctrine, issue preclusion applies when the same issue arises in different cause of actions involving the same parties or those in privity with one another. As the Kansas Supreme Court recently explained:

> "Although the terms res judicata and claim preclusion often are used interchangeably, res judicata encompasses two distinct doctrines. The first doctrine is issue preclusion, also known as collateral estoppel, and it precludes a party from relitigating an issue actually decided in a prior case and necessary to the judgment. The second is claim preclusion, sometimes called res judicata, which prevents parties from relitigating the same claim or cause of action even if certain issues were not litigated in the prior action. *In re Tax Application of Fleet*, 293 Kan. 768, 777, 272 P.3d 583 (2012)." *Herington v. City of Wichita*, 314 Kan. 447, 457, __ P.3d ___, 2021 WL 5990322 (No. 120,329, filed December 17, 2021).

Here, a review of the record as well as a review of the opinion issued by our court in the interlocutory appeal brought by the State in the criminal action shows that the prior

judgment regarding the issue of Heinken's purported request for additional testing under K.S.A. 8-1004 was decided on the merits. Likewise, the parties to the previous appeal and to this appeal are either the same or they are in privity with one another. Significantly, Heinken and the State were parties to the criminal action and are parties to this administrative action arising out of the same incident. Although different subdivisions represented the State's interest in the two cases, we find the State of Kansas to be a party in both cases or—at the very least—we find the subdivisions to be in privity with one another. We further find that the resolution of the issue presented in this appeal was necessary for resolution of the previous appeal.

Consequently, we find that all of the elements required to establish issue preclusion or collateral estoppel have been met. As a result, Heineken is precluded from relitigating an issue that was actually decided in the prior appeal in his criminal case and was necessary to the judgment in that case. For these reasons, we conclude that the district court did not err in denying Heineken's petition for review or in upholding the administrative suspension of his driving privileges.

Even if issue preclusion was not applicable in this appeal, we also find that the district court reached the correct result in upholding Heinken's administrative suspension based on our review of the record on appeal. We have reviewed the record to determine whether the district court's findings are supported by evidence that is substantial when viewed in light of the record as a whole. See K.S.A. 77-621(c)(7), (d); *Swank v. Kansas Dept. of Revenue*, 294 Kan. 871, 881, 281 P.3d 135 (2012). In doing so, we have not reweighed the evidence, assessed the credibility of witnesses, or resolved evidentiary conflicts. *State v. Boggess*, 308 Kan. 821, 825, 425 P.3d 324 (2018).

Under K.S.A. 8-1004, if a law enforcement officer "refuses to permit . . . additional testing," the results of any properly administered tests given by the officer are not to be considered "competent evidence." The purpose of the statute is to allow a

person suspected of driving under the influence the ability to procure probative evidence and to prepare a defense. Even so, what is considered to be a "reasonable opportunity to have an additional test" performed depends on the circumstances of each case. *State v. George*, 12 Kan. App. 2d 649, Syl. ¶¶ 1, 2, 4, 754 P.2d 460 (1988).

In the present case, the record reveals that although Heineken asked about the possibility of additional testing, he did not request to call a physician or hospital to arrange for such testing. Likewise, the record shows that Heineken did not request to be taken to a physician's office or hospital. The record also establishes that Deputy Myers accurately told Heineken that any additional testing would be "on your own" and not part of the testing being performed at the law enforcement center. Thus, we find no violation of K.S.A. 8-1004 under the circumstances presented in this case.

As the panel in *State v. Heineken* recognized:

"Certainly, a law enforcement officer may not unreasonably interfere with a person suspected of driving under the influence's attempts to secure additional testing. *George*, 12 Kan. App. 2d at 655. Furthermore, the State's test results must be suppressed when the suspect has actually made a request for additional testing and an officer refuses to permit such additional testing. *City of Dodge City v. Ibarra*, 35 Kan. App. 2d 643, 648, 133 P.3d 159 (2006). Even so, a suspect's invocation of his or her statutory right to additional testing under K.S.A. 8-1004 must be unambiguous and unequivocal. See *Mitchell v. Kansas Department of Revenue*, 32 Kan. App. 2d 298, 299-302, 81 P.3d 1258 (2004); *State v. Eichem*, No. 91,903, 2005 WL 2949404, at *6 (Kan. App. 2005) (unpublished opinion).

In *Eichem*, a law enforcement officer arrested the defendant for DUI. According to the officer, the defendant stated that he would prefer a blood test but was informed that only a breath test was being offered. At his suppression hearing, the defendant testified that he requested a blood test because he did not trust the breath test machines. In affirming the district court's refusal to suppress the results of the breath test, the *Eichem*

panel held that the officer did not refuse to permit additional testing. Instead, the panel found that '[a]t most, the defendant made an ambiguous statement concerning his desire to obtain a blood test, which the deputy was under no obligation to clarify.' 2005 WL 2949404, at *6." *Heineken*, 2020 WL 1646805, at *3.

Like the district court, we find that Heineken's questions and statements to Deputy Myers about the possibility of additional testing were at most ambiguous and were not unequivocal. Even if Heineken's questions and statements could be construed as a request for additional testing, there is nothing in the record to suggest that Deputy Myers unreasonably interfered with Heineken's rights if he desired to secure additional testing. Rather, a review of the record shows that Deputy Myers attempted to answer Heineken's questions to the best of his ability and gave him several opportunities to ask additional questions.

In summary, we conclude that the issue presented in this case was previously decided by a panel of this court. Hence, relitigation of this issue in this appeal is barred. Nevertheless, even if issue preclusion were inapplicable, we conclude that there is substantial competent evidence in the record to support the district court's decision to deny Heineken's petition for review and uphold the administrative suspension of his driver's license. For these reasons, we affirm the district court's decision.

Affirmed.